In re Shea Thomas SWEENEY, also known as Shea T. Sweeney, also known as Shea Sweeney, Debtor.

Colorado Judicial Department, Plaintiff–Appellee,

v.

Shea Thomas Sweeney, Defendant–Appellant.

BAP No. CO–05–056.
Bankruptcy No. 04–27202–MER.
Adversary No. 04–2111–MER.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

April 21, 2006.

Raphael M. Solot, Denver, Colorado, for Defendant–Appellant.

Melody Mirbaba, Assistant Attorney General (Maurice Knaizer, Deputy Attorney General with her on the brief), Denver, Colorado, for Plaintiff–Appellee.

Before McFEELEY, Chief Judge, CLARK, and CORNISH, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Debtor/Defendant/Appellant Shea Thomas Sweeney, ("Debtor"), appeals an order of the bankruptcy court for the District of Colorado concluding that a restitution debt awarded in juvenile delinquency proceedings was nondischargeable under

11 U.S.C. § 1328(a)(3).[1] The Debtor argues that the bankruptcy court erred in finding the debt nondischargeable because juvenile delinquency proceedings are not adjudications of guilt but of status. Therefore, the restitution debt was not "included in a sentence on the debtor's conviction of a crime" as mandated by § 1328(a)(3). For the following reasons, we reverse and remand.

## I. Background

On August 10, 2004, the Debtor filed a Chapter 13 proceeding. At issue here is a debt of $85,292.24, listed in the Debtor's schedules as dischargeable, general, unsecured debt.[2] This debt arose from a restitution order entered in 1995, by a special master for the District Court of Arapahoe County, Colorado. The 1995 restitution order followed and was part of a 1993 guilty plea agreement by the then 12–year–old Debtor to second-degree arson. Under his plea agreement, Debtor was adjudicated a juvenile delinquent by the state of Colorado under the Colorado Children's Code.

The State of Colorado, Colorado Judicial Department ("CJD") filed a Proof of Claim and ultimately, an adversary proceeding on the basis that the restitution debt was nondischargeable under § 1328(a)(3). Debtor moved for summary judgment. CJD filed a cross motion for summary judgment.

The motions were heard on May 5, 2005. On June 7, 2005, the bankruptcy court entered an order and a judgment granting CJD's Motion for Summary Judgment and denying Debtor's. In the Order, the bankruptcy court concluded that "[i]n Colorado" restitution is governed by the criminal code and not by the juvenile code; therefore, the restitution order was criminal in character and so fell within the requirements of § 1328(a)(3).

This appeal timely followed. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Colorado. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. Discussion

In *Pa. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court concluded that criminal restitution debts were potentially dischargeable under the Bankruptcy Code in Chapter 13 cases. In response, Congress passed § 1328(a)(3), which abrogated *Davenport*. Under § 1328(a)(3) a court may not discharge a debt "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime."

In this case, the parties don't dispute the facts; the sole issue is one of law: specifically, whether an adjudication of juvenile delinquency is a "conviction of a crime" such that the requirement to pay restitution is within the parameters of § 1328(a)(3). Questions of law we review de novo. De novo review requires an independent determination of the issue, giving no special weight to the bankruptcy court's decision. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

The bankruptcy court concluded that a juvenile proceeding resulting in a sentence that includes a restitution award is a "conviction of a crime." It conducted the fol-

---

1. All future statutory references will be to Title 11 of the United States Code unless otherwise noted.

2. Initially, in his schedules, Debtor listed the restitution debt as "nondischargeable."

lowing analysis. First, the bankruptcy court examined whether federal or state law controlled in determining the meaning of "conviction of crime" in § 1328(a)(3). The court found that an evaluation of dischargeability under § 1328 was similar to an evaluation of dischargeability under § 523. It stated that in § 523 cases whether a debt fits within its subsections is a matter of state law while dischargeability remains one of federal law. Therefore, the bankruptcy court concluded, it could look to Colorado law for guidance as to whether a restitution debt arising from a juvenile offense may be considered "included in a sentence on the debtor's conviction of a crime."

Next, the bankruptcy court examined Colorado law. Under Colo.Rev.Stat. § 19–2–918 (2005), which governs restitution in juvenile cases, the Colorado Code of Criminal Procedure applies and restitution by juveniles is mandatory. The bankruptcy court concluded:

By specifically including restitution as an area in which the Criminal Code rather than the Children's Code applies to juvenile offenders, the General Assembly placed juvenile restitution in the same category as adult restitution-as a debt arising from the conviction of a crime. Thus, since an adult could not discharge a debt controlled by Colo.Rev. Stat. § 16–18.5–104 (2000), the statute similarly prevents discharge of a restitution debt owed by a juvenile offender.

Finally, observing that federal law also incorporates the criminal code when ordering restitution from a juvenile defendant, the bankruptcy court concluded that the same result would be reached under federal law.

The bankruptcy court erred in looking to state law for the meaning of the phrase "conviction of a crime." As the bankruptcy court correctly observed, in complaints brought under § 523 cases, state law determines property rights, and bankruptcy law determines dischargeability. *Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, here, property rights are not at issue, the issue is one of dischargeability. Whether a debt fits within the meaning or definition of the phrase "conviction of a crime" governs the dischargeability of the debt. When defining words and phrases in a federal law meant to have uniform effect, courts are directed to look to federal law. *Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943) (finding that "in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law."). "One reason for this rule of construction is that federal statutes are generally intended to have uniform nationwide application." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (interpreting the word "domicile" in Indian Child Welfare Act); *see also Farm Credit Bank of Wichita v. Hodgson (In re Hodgson)*, 167 B.R. 945, 949–50 (Bankr.D.Kan. 1994) (concluding that the federal common law controls the determination of the definition of "domicile" for purposes of § 522(b)(2)(A) because bankruptcy statutes have uniform nationwide application, and application of law of the states might produce a lack of uniformity). Whether one has been "convicted of a crime" within the language of the bankruptcy statutes is a question of federal law, "despite the fact that the predicate offense and its punishment are defined by the law of the State." *See Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (examining the meaning of the term "conviction" within the context of the federal gun control statutes). In our examination of the meaning

of "conviction" we may seek guidance from state law since "conviction" occurs under state law procedures but our interpretation must be consistent with federal policy. *See, e.g., United States v. Chamberlain,* 159 F.3d 656, 658 (1st Cir.1998).

■ Sweeney argues that the bankruptcy court incorrectly concluded that the debt was nondischargeable under § 1328(a)(3) because under federal law juveniles are not convicted of crimes they are adjudicated juvenile delinquents. Because juvenile delinquency is a determination of status and not a "conviction," Sweeney reasons, the restitution award cannot be "included in a sentence on the debtor's conviction of a crime."[3]

The bankruptcy court concluded that because restitution is governed by the criminal code, the resulting sentence is a criminal conviction for purposes of nondischargeability under § 1328(a)(3). That premise turns the statute on its head. According to § 1328(a)(3), nondischargeable restitution is that which is "included in a sentence on the debtor's conviction of a crime." To read the statute the way the bankruptcy court suggests would nullify the word "included" and make the conviction of the crime subordinate to the restitution award. Additionally, it would make a state's definition of the word "restitution" determinative of whether a debt falls within § 1328(a)(3), thus depriving the federal statute of its necessary uniformity. The initial question under § 1328(a)(3) must be whether there was a criminal conviction.

CJD argues that we must look to the definition of "conviction" to determine whether adjudication of guilt in juvenile proceedings results in a conviction. Because the term "conviction" is not defined in the Bankruptcy Code, CJD argues that under the plain meaning rule, we must look to the dictionary definition. In Black's Law Dictionary "conviction" is defined as "the final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere . . . ." Black's Law Dictionary 301 (5th Ed.1979). According to CJD, when Sweeney pled guilty to criminal conduct, he was adjudged guilty by the Colorado judicial system and therefore, convicted. It is the conviction, CJD argues, that places him within the parameters of § 1328(a)(3).

While CJD is correct in noting the significance of the word "conviction," this word does not stand alone, as it is modified by the prepositional phrase "of a crime." In this case, whether one who participated in proceedings in a juvenile court was "convicted of a crime" turns on what it means to be adjudicated guilty in juvenile court.

Generally, under federal law, one adjudicated guilty in juvenile court is found to be a juvenile delinquent. Juvenile delinquency is defined in the Federal Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. § 5031–42 (2006) as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult . . . ." 18 U.S.C. § 5031. In *United States v. Brian N.,* 900 F.2d 218, 220 (10th Cir.1990), the Tenth Circuit concluded that prosecution under this Act "results in an adjudication of status—not a criminal conviction." (Citing *United States v. Frasquillo–Zomosa,* 626 F.2d 99, 101 (9th Cir.1980)).

---

**3.** Sweeney further observes that the bankruptcy court erred in its reasoning because the restitution statute incorporating the criminal code was not enacted until 2000 while Swee- ney was ordered to pay restitution under the law in effect in 1993. Because of our disposition of this matter, we need not address that argument here.

We consider state law in determining the criminality of proceedings not specifically brought under federal law. In this case, the proceedings were in state juvenile court and involved Debtor's admission of conduct amounting to arson under state law, which resulted in an adjudication of delinquency. In Colorado, "[a] delinquency adjudication ... is a special statutory proceeding that is noncriminal in nature." *C.B. v. People*, 122 P.3d 1065, 1066 (Colo. Ct.App.2005). Colorado juvenile courts have limited jurisdiction over noncriminal matters. *See* Colo. Const. art. VI, § 9 (giving district courts exclusive jurisdiction over all criminal proceedings); *People v. Juvenile Court*, 915 P.2d 1274, 1276–77 (Colo.1996). As defined in the Colorado Children's Code, a juvenile delinquent is one "who has been found guilty of a delinquent act." Colo.Rev.Stat. § 19–1–103(71) (2006). Adjudication under the Colorado Children's Code "means a determination by the court that it has been proven beyond a reasonable doubt to the trier of fact that the juvenile has committed a delinquent act or that a juvenile has pled guilty to committing a delinquent act." Colo. Rev.Stat. § 19–1–103(2) (2006).

 CJD argues that we should look to the extensive legislative history of § 1328(a)(3) in interpreting the phrase "conviction of a crime." CJD contends that the legislative history indicates that Congress intended that all restitution orders arising out of criminal offenses not be discharged in Chapter 13 proceedings. With this argument, CJD urges this Court to interpret the phrase "conviction of a crime" broadly-essentially reading this phrase with an emphasis on "conviction" and thereby including restitution debts incurred in civil proceedings. That we cannot do. The plain meaning of a statute is conclusive except in rare cases where the literal application of a statute will produce

results "demonstrably at odds with the intention of its drafters." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). CJD has produced no evidence of such an ambiguity. In fact, construing this phrase broadly contradicts a basic bankruptcy tenet that "exceptions to discharge are to be narrowly construed" and doubts resolved in the debtor's favor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997). Moreover, we may not construe a statute in such a way as to nullify or make meaningless words and phrases. *Bridger Coal Co./Pac. Minerals, Inc. v. Dir., Office of Workers' Comp. Programs*, 927 F.2d 1150, 1153 (10th Cir.1991). In § 1328(a)(3), the word "conviction" is modified and thereby limited by the phrase "of a crime." Under both federal and state law, the Debtor was adjudicated a juvenile delinquent in civil proceedings; not convicted of a crime.

Because the proceedings were not criminal under state law, and by definition, Sweeney was not convicted of a crime under federal law, the restitution debt cannot have been a debt included in the "conviction of a crime." In the absence of a restitution debt "included in a conviction of a crime," § 1328(a)(3) cannot be used to except the Debtor's restitution debt from discharge.

### III. Conclusion

For the reasons set forth above, we reverse and remand to the bankruptcy court for proceedings consistent with this Opinion.