1 

2026 CO 9
 Rebeca Hinds, Petitioner: v. Corrine Foreman, Respondent: 
No. 24SC698
Supreme Court of Colorado, En Banc
February 2, 2026
 ADVANCE SHEET HEADNOTE 
 This case requires the supreme court to determine whether a final judgment granting a special motion to dismiss under the anti-SLAPP ("strategic lawsuit against public participation") statute, § 13-20-1101, C.R.S. (2025), may be appealed from a county court to the court of appeals. 
 The supreme court holds that section 13-20-1101 and section 13-4-102.2, C.R.S. (2025), are unconstitutional to the extent that they authorize the court of appeals to review a final judgment of a county court because article VI, section 17 of the Colorado Constitution requires that a final judgment of the county court be reviewed on appeal either by a district court or this court. 
 Thus, the court concludes that the court of appeals lacks jurisdiction over the petitioner's appeal and accordingly remands the case to the division with directions to dismiss the appeal. 
 C.A.R. 50 Certiorari to the Colorado Court of Appeals Court of Appeals Case No. 24CA1380 
 Attorneys for Petitioner: Ernst Legal Group, LLC Dan Ernst Denver, Colorado 
 Attorneys for Respondent: JVAM PLLC J. Casey Martin Laurel Quinto Quentin H. Morse Buena Vista, Colorado 
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE GABRIEL, and JUSTICE SAMOUR joined. 
 
2

 OPINION 
 BERKENKOTTER, JUSTICE 
 ¶1 We accepted transfer of this case from the court of appeals pursuant to section 13-4-109, C.R.S. (2025); section 13-4-110(1)(a), C.R.S. (2025); and C.A.R. 50(a)(1)-(3) because the issue raised involves matters of substance not previously determined by this court. The case requires us to determine whether a final judgment granting a special motion to dismiss under the anti-SLAPP ("strategic lawsuit against public participation") statute, § 13-20-1101, C.R.S. (2025), may be appealed from a county court to the court of appeals.[1] We conclude that the statutes authorizing such an appeal, section 13-20-1101 and section 13-4-102.2, C.R.S. (2025), are unconstitutional to the extent that they authorize the court of appeals to review a final judgment of a county court. This is because article VI, section 17 of the Colorado Constitution explicitly requires that a final judgment of a county court be reviewed on appeal by this court or the district court. 
 
3

 ¶2 Thus, we conclude that the court of appeals lacks jurisdiction over Rebeca Hinds's ("Hinds") appeal. We, accordingly, remand the case to the division with directions to dismiss the appeal. Because Hinds could not have reasonably anticipated that her appeal should have been filed in the district court, her request for leave to file out of time is granted. 
 I. Facts and Procedural History 
 ¶3 In March of 2022, Hinds requested a temporary protection order ("TPO") against her boyfriend J.F. As grounds for the TPO, Hinds alleged that J.F. put bleach in the humidifiers in their home despite knowing that she was severely allergic to bleach. This, according to Hinds, caused her serious injury and required her to seek medical treatment. Hinds also testified that she was terrified J.F. would find "some other way to 'accidentally' kill or incapacitate" her. 
 ¶4 Officer Mitchell subsequently began investigating Hinds's allegations and "had concerns about the veracity of her reports." As part of his investigation, Officer Mitchell sought out witnesses, including Corrine Foreman ("Foreman"), who stated in an affidavit 
 

 that, around December 2021, . . . Ms. Hinds expressed . . .
 she was having relationship problems with her boyfriend
 [J.F.], [Hinds] was tired of him, and . . . would fabricate
 or make up a domestic violence allegation to get [J.F.] to
 leave or get him removed from the house.
 

 ¶5 Foreman indicated that she made this statement to law enforcement to the best of her knowledge and recollection and did not seek out law enforcement. 
 
4

 Hinds was charged with one count of false reporting to authorities, a class 2 misdemeanor, pursuant to section 18-8-111(1)(a)(III), (b), C.R.S. (2025). Seven months later, the charge was dismissed. Hinds then filed a civil complaint against Foreman in county court alleging that Foreman "made knowingly false and defamatory statements" by accusing Hinds of "criminal conduct for which she was charged." And, though Hinds acknowledged that the criminal charge against her was dismissed, she claimed that she "had to endure and incur the intended humiliation, economic damages[,] . . . [and] non-economic damages to her well-being, health and welfare, as well as cost[s] and fees of litigation." 
 ¶6 In response to the complaint, Foreman filed a special motion to dismiss arguing that her statements to Officer Mitchell were protected by the anti-SLAPP statute.[2] 
 
5

 ¶7 First, the county court agreed that Foreman's speech fell under the protection of the anti-SLAPP statute because the claims against her arose from acts "in furtherance of [her] right of . . . free speech . . . in connection with a public issue." § 13-20-1101(3)(a). Foreman's speech, in the court's view, constituted a "written or oral statement . . . made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law." § 13-20-1101(2)(a)(I). 
 ¶8 The county court then considered whether Hinds, as the plaintiff, established "a reasonable likelihood" of success on her claims. § 13-20-1101(3)(a), (c). The county court found that Hinds met her burden regarding the falsity of Foreman's statements. However, the court concluded that Hinds failed to produce "sufficient evidence that [Foreman] . . . acted with actual malice" because Foreman "was a collateral witness in an overall criminal investigation involving" Hinds and J.F. Further, Foreman did not ask for criminal charges to be filed against Hinds, nor did she give any additional statements regarding the investigation. Officer Mitchell, the court found, pursued charges against Hinds based on the totality of the circumstances. 
 
6

 ¶9 The county court accordingly granted the special motion to dismiss and awarded Foreman fees and costs. The court's order granting Foreman's special motion to dismiss was a final judgment-it dismissed the only issue before the court. Hinds then appealed the county court's judgment to the court of appeals. See Hinds v. Foreman, at 1 (Colo.App. No. 24CA1380, Aug. 16, 2024) (unpublished order). 
 ¶10 The division subsequently flagged a jurisdictional concern. The judgment being appealed, it observed, was without doubt a final judgment of a county court, since the judgment granted the motion to dismiss with prejudice, and thus concluded the proceedings. Id. at 2. What's more, the division noted, the anti-SLAPP statute, § 13-20-1101(7), explicitly confers jurisdiction upon the court of appeals as it directs that "an order granting or denying a special motion to dismiss is appealable to the . . . court of appeals pursuant to section 13-4-102.2." See § 13-4-102.2 ("The court of appeals has initial jurisdiction over appeals from motions to dismiss actions involving constitutional rights pursuant to section 13-20-1101."). But there was a problem. The division explained: 
 

 Generally, the court of appeals does not have jurisdiction to
 review county court cases. This is because [a]rticle VI,
 [s]ection 17 of the Colorado Constitution provides,
 "[a]ppellate review by the supreme court or the district
 courts of every final judgment of the county courts
 shall be as provided by law," (emphasis added), and
 section 13-6-310(1)[, C.R.S. (2025),] provides, in turn,
 "[a]ppeals from final judgments . . . of the county
 court shall be taken to the district court."
 

 
7

 Hinds, at 1-2 (omission in original) (first quoting Colo. Const. art. VI, § 17; and then quoting § 13-6-310(1)). 
 ¶11 "So," the division continued, "that raises the question whether this appeal should, per the Colorado Constitution and section 13-6-310(1), have been filed in the district court, rather than in this [c]ourt." Hinds, at 2. Ultimately, the division filed a request for determination of jurisdiction pursuant to C.A.R. 50 with this court, which we granted. Having done so, we now consider whether a county court's final judgment granting a special motion to dismiss under the anti-SLAPP statute may be appealed to the court of appeals given that both statutes authorizing such an appeal appear to conflict with article VI, section 17 of the Colorado Constitution, and section 13-6-310(1). We conclude that sections 13-20-1101 and 13-4-102.2 are unconstitutional to the extent that they permit the court of appeals to review a final judgment of the county court. 
 II. Analysis 
 ¶12 We begin our analysis by identifying the relevant standard of review. Then, we explore the tension between the appeals authorized by sections 13-20-1101 and 13-4-102.2, on the one hand, and the explicit directions regarding county court appeals provided in article VI, section 17 of the Colorado Constitution, and section 13-6-310(1), on the other. Along the way, we also lay out the substantive standard governing the review of a legislative act that seeks to limit a 
 
8

 constitutional provision and apply that standard to the statutes and constitutional provision at issue here. 
 A. Standard of Review 
 ¶13 We review issues of constitutional and statutory interpretation de novo. Gessler v. Colo. Common Cause, 2014 CO 44, ¶ 7, 327 P.3d 232, 235. In interpreting the Colorado Constitution, we afford the language "its 'ordinary and common meaning' to give 'effect to every word and term contained therein, whenever possible.'" People v. Rodriguez, 112 P.3d 693, 696 (Colo. 2005) (quoting Bd. of Cnty. Comm'rs v. Vail Assocs., Inc., 19 P.3d 1263, 1273 (Colo. 2001)). "If the language of a constitutional provision is clear and unambiguous, we will enforce it as written." Norton v. Rocky Mountain Planned Parenthood, Inc., 2018 CO 3, ¶ 8, 409 P.3d 331, 334. 
 ¶14 When interpreting a statute, "we seek to give effect to the General Assembly's . . . intent." All. for a Safe &Indep. Woodmen Hills v. Campaign Integrity Watchdog, LLC, 2019 CO 76, ¶ 21, 450 P.3d 282, 287. Similarly, "[w]e read words and phrases in context, according them their plain and ordinary meanings. If the language is clear, we apply it as written and need not resort to other tools of statutory interpretation." Id. (citation omitted). 
 B. Constitutional Conflict 
 ¶15 "The [C]onstitution is the supreme law of the state, solemnly adopted by the people, which must be observed by all departments of government." In re Senate Bill No. 9, 
 
9

 56 P. 173, 174 (Colo. 1899). "Essential to our analysis is the principle that Colorado's Constitution" is a "'limitation on [the] power [of the General Assembly].'" Rodriguez, 112 P.3d at 695 (quoting Reale v. Bd. of Real Est. Appraisers, 880 P.2d 1205, 1208 (Colo. 1994)). "If a legislative act undertakes to limit the provisions of the Constitution, then in a contest, the Constitution survives and the act falls." Yenter v. Baker, 248 P.2d 311, 314 (Colo. 1952) (quoting Barker v. St. Louis Cnty., 104 S.W.2d 371, 376 (Mo. 1937)). "To declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform, unless the conflict between the law and the [C]onstitution is clear and unmistakable." People ex rel. Thomas v. Goddard, 7 P. 301, 304 (Colo. 1885); see also Colo. Ethics Watch v. Indep. Ethics Comm'n, 2016 CO 21, ¶ 14, 369 P.3d 270, 273. 
 ¶16 Previously, in determining whether a statute conflicts with the Constitution, "we have held that 'legislation that furthers the purpose of . . . constitutional provisions or facilitates their enforcement is permissible.' By contrast, 'legislation which directly or indirectly impairs, limits[,] or destroys rights granted by . . . constitutional provisions is not permissible.'" In re Interrogatories on Senate Bill 21-247 Submitted by Colo. Gen. Assembly, 2021 CO 37, ¶ 32, 488 P.3d 1008, 1018 (omissions in original) (citation omitted) (quoting Zaner v. City of Brighton, 917 P.2d 280, 286 (Colo. 1996)) (citing In re Interrogatories Propounded by Senate Concerning House Bill 1078, 
 
10

 536 P.2d 308, 313 (Colo. 1975) ("The test for the existence of a conflict is: Does one authorize what the other forbids or forbid what the other authorizes?")). 
 ¶17 As noted, the constitutional provision at issue here provides: "Appellate review by the supreme court or the district courts of every final judgment of the county courts shall be as provided by law." Colo. Const. art. VI, § 17 (emphasis added). "We have consistently characterized a final [judgment] as 'one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings.'" People in Int. of R.S. v. G.S., 2018 CO 31, ¶ 37, 416 P.3d 905, 914 (quoting People v. Guatney, 214 P.3d 1049, 1051 (Colo. 2009)). 
 ¶18 In this instance, there is no question that the county court order being appealed is a final judgment. The only matter before the county court was Hinds's defamation claim against Foreman-which the court dismissed with prejudice when it granted Foreman's special motion to dismiss. The county court's dismissal ended the action and "le[ft] nothing further for the court . . . to do in order to completely determine the rights of the parties involved." Id. (quoting Guatney, 214 P.3d at 1051). 
 ¶19 Hinds points to sections 13-20-1101(7) and 13-4-102.2 and argues that her appeal was properly filed in the court of appeals. She is correct up to a point: 
 
11

 These statutes explicitly allow such a filing. Section 13-20-1101(7) provides that "an order granting or denying a special motion to dismiss is appealable to the . . . court of appeals pursuant to section 13-4-102.2." Section 13-4-102.2, in turn, states: "The court of appeals has initial jurisdiction over appeals from motions to dismiss actions involving constitutional rights pursuant to section 13-20-1101." 
 ¶20 But here there is a direct conflict between these statutory provisions and our Constitution's command that only this court and district courts may provide appellate review of a county court's final judgment. Sections 13-20-1101(7) and 13-4-102.2, accordingly, authorize what the Colorado Constitution forbids. See In re Interrogatories on Senate Bill 21-247, ¶ 32, 488 P.3d at 1018 (citing In re Interrogatories Propounded by Senate, 536 P.2d at 313). In the face of this type of conflict, we have consistently recognized the obvious: "[T]he Constitution survives and the act[s] fall[]." Yenter, 248 P.2d at 314 (quoting Barker, 104 S.W.2d at 376); see also Garcia v. Dist. Ct., 403 P.2d 215, 219 (Colo. 1965). 
 ¶21 Our decision in Garcia illustrates the point. There, we held that a statute that attempted to "subtract" jurisdiction from the district courts by vesting the Denver Juvenile Court with exclusive jurisdiction conflicted with the Colorado Constitution and thus was unconstitutional. Garcia, 403 P.2d at 219. The legislature could not constitutionally enact the statute because it conflicted with 
 
12

 the part of our Constitution that provides that "the [d]istrict [c]ourts of this State . . . shall have original jurisdiction in all criminal cases." Id. 
 ¶22 We apply Garcia's underlying reasoning here and hold that sections 13-20-1101(7) and 13-4-102.2 are unconstitutional to the extent that they permit the court of appeals to review a final judgment of the county court. See Colo. Const. art. VI, § 17. To the extent that the division in VOA Sunset Housing LP v. D'Angelo, 2024 COA 61, 555 P.3d 635, suggests that the court of appeals may review a final judgment of the county court, we overrule that part of the division's opinion. In sum, we hold that appellate review of a final judgment issued by a county court on an anti-SLAPP special motion to dismiss is reserved to the district court and this court, consistent with our Constitution. 
 ¶23 We emphasize, however, that sections 13-20-1101(7) and 13-4-102.2 may, consistent with Colorado's Constitution, allow the court of appeals to review a county court's "order granting or denying a special motion to dismiss," § 13-20-1101(7), when such an order is not a final judgment. That is, the court may consider an appeal of an order that does not "end[] the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." G.S., ¶ 37, 416 P.3d at 914 (quoting Guatney, 214 P.3d at 1051). 
 
13

 ¶24 We recognize that the path we carve here is not an elegant solution to the conundrum caused by sections 13-20-1101(7) and 13-4-102.2. But the General Assembly's choice to authorize a party to appeal this type of order when it does not end the particular action in which it is entered squares with article VI, section 17 of the Colorado Constitution. Ultimately, consideration of a simpler, arguably less confusing, appeal process for review of county court rulings in this context is a matter best left to the legislature, not this court. 
 III. Conclusion 
 ¶25 Having concluded that sections 13-20-1101(7) and 13-4-102.2 are unconstitutional insofar as they permit the court of appeals to review a final judgment of a county court, we conclude that the court of appeals lacks jurisdiction over Hinds's appeal. Accordingly, we remand the case to the division with directions to dismiss the appeal. Because Hinds could not reasonably have anticipated that her appeal should have been filed in the district court, her request for leave to refile her appeal out of time in the district court is granted. We decline to address Foreman's request for attorney fees as it is not yet ripe. See § 13-20-1101(4)(a) ("[A] prevailing defendant on a special motion to dismiss is entitled to recover the defendant's attorney fees and costs."). 
 --------- 
 Notes: 
 [1] We assume for purposes of this opinion, without deciding, that the anti-SLAPP statute can apply in a county court proceeding. We accepted transfer of this case to address the following issue: 
 
 Whether a county court's grant of a special motion
 to dismiss under sections 13-4-102.2, C.R.S. (2024)[,] and
 13-20-1101[,] C.R.S. (2024)[,] can be appealed to the
 Colorado Court of Appeals given that both sections appear to
 conflict with section 13-6-310(1), C.R.S. (2024)[,] and
 [a]rticle VI, [s]ection 17 of the Colorado
 Constitution.
 
 [2] The anti-SLAPP statute safeguards speech against those who attempt to use litigation to chill expressive activity. Lind-Barnett v. Tender Care Veterinary Ctr., Inc., 2025 CO 62, ¶ 1, 580 P.3d 573, 574-75. A defendant may claim protection under the anti-SLAPP statute by filing "a special motion to dismiss in the very early stages of litigation." Id. at ¶ 2, 580 P.3d at 575. If a defendant filing a special motion to dismiss can show "that the [plaintiff's] claim arises from the defendant's exercise of their right of petition or free speech[,] [t]hen the burden shifts 'to the plaintiff to demonstrate a "reasonable likelihood that [they] will prevail on the claim."'" Id. (citations omitted) (quoting Rosenblum v. Budd, 2023 COA 72, ¶ 24, 538 P.3d 354, 362); see also § 13-20-1101(3)(a). If the plaintiff is unable to meet their burden, "the case is dismissed." Lind-Barnett, ¶ 2, 580 P.3d at 575. To survive a special motion to dismiss "when a defendant's allegedly defamatory statements involve a matter of public concern, the plaintiff must . . . prove, among other things, that the defendant 'published the statements with actual malice, instead of mere negligence.'" Id. at ¶ 42, 580 P.3d at 583 (quoting Coomer v. Salem Media of Colo., Inc., 2025 COA 2, ¶ 23, 565 P.3d 1133, 1143). 
 ---------