Colorado Supreme Court Opinions || April 25, 2016

Colorado Supreme Court -- April 25, 2016
2016 CO 21 No. 15SA244 No. 15SA244, Colo. Ethics Watch v. Indep. Ethics Commân

 The Supreme Court of the State of Colorado 2 East 14th Avenue • Denver, Colorado 80203
 2016 CO 21 
 Supreme Court Case No. 15SA244 
 Original Proceeding Pursuant to C.A.R. 21 District Court, City and County of Denver, Case No. 15CV31862
 Honorable A. Bruce Jones, Judge
 In Re 
 Plaintiff: 
 Colorado Ethics Watch, 
 v.
 Defendant: 
 Independent Ethics Commission.
 Rule Made Absolute 
 en banc 
 April 25, 2016
 Attorneys for Plaintiff: 
 Colorado Ethics Watch
 Luis Toro
 Margaret Perl
 Denver, Colorado 
 
 Attorneys for Defendant: 
 Cynthia H. Coffman, Attorney General
 Frederick R. Yarger, Solicitor General
 Lisa Brenner Freimann, First Assistant Attorney General
 Kyle Dumler, Senior Assistant Attorney General
 Natalie M. Lucas, Assistant Attorney General
 Denver, Colorado 
 
 
 CHIEF JUSTICE RICE delivered the Opinion of the Court.
 JUSTICE GABRIEL dissents, and JUSTICE MÁRQUEZ and JUSTICE HOOD join in the dissent.

 ¶1 In this original proceeding, we consider whether the Independent Ethics Commission’s (“IEC”) decision to dismiss a complaint against a public officer as frivolous is subject to judicial review.  The plaintiff contends that the General Assembly authorized such review when it enacted section 24-18.5-101(9), C.R.S. (2015), which provides that “[a]ny final action of the commission concerning a complaint shall be subject to judicial review.”  The Colorado Constitution, however, forbids the General Assembly from “limit[ing] or restrict[ing]” IEC’s powers.  Colo. Const. art. XXIX, § 9.  Moreover, although the constitution provides that “penalties may be provided by law,” id. § 6 (emphasis added), it further provides that IEC “may dismiss frivolous complaints without conducting a public hearing,” id. § 5(3)(b).  We conclude that, while the General Assembly may authorize judicial review of IEC’s enforcement decisions, it may not encroach upon IEC’s decisions not to enforce.  Therefore, we hold that the General Assembly’s “judicial review” provision does not apply to frivolity dismissals.  Accordingly, we make our rule to show cause absolute, and we remand this case to the trial court with instructions to dismiss the plaintiff’s complaint.
 I. Facts and Procedural History 
 ¶2 In 2006, Colorado voters passed Amendment 41 and created IEC, an independent commission tasked with investigating allegations of government officials’ misconduct.  See id. § 5 (“Amend. 41”).  The amendment authorizes any person to file a complaint “asking whether a public officer, member of the general assembly, local government official, or government employee has failed to comply” with certain standards of conduct.  Id. § 5(3)(a).  Although IEC must “conduct an investigation, hold a public

  

 hearing, and render findings on each non-frivolous complaint,” it may dismiss frivolous complaints without performing such actions.  Id. § 5(3)(b)–(c).  When IEC dismisses a complaint as frivolous, it must keep that complaint confidential.  Id. § 5(3)(b).
 ¶3 In 2014, Plaintiff Colorado Ethics Watch (“Ethics Watch”), a self-styled watchdog organization, filed a complaint with IEC regarding a commissioner in Elbert County.  After initially staying the matter, IEC began reviewing Ethics Watch’s complaint in March 2015.  IEC conducted a preliminary investigation, and in May 2015, after meeting in executive session to discuss the complaint, IEC dismissed it as frivolous.  Subsequently, Ethics Watch filed a request with IEC under the Colorado Open Records Act, §§ 24-72-200.1 to -206, C.R.S. (2015), seeking “[a]ll documents collected, reviewed or generated in connection with” its complaint.  IEC denied the request, citing Amendment 41’s confidentiality provision and stating that it “shall maintain all the documents responsive to [the] request as confidential.”
 ¶4 Ethics Watch then sued IEC, claiming relief under both the State Administrative Procedure Act (“APA”), § 24-4-106, C.R.S. (2015), and C.R.C.P. 106.  In particular, Ethics Watch sought an order from the trial court declaring IEC’s frivolity determination “unlawful” and compelling IEC to “proceed with an investigation, to be followed by a public hearing.”  After the trial court denied IEC’s motion to dismiss for lack of subject matter jurisdiction, IEC asked us to exercise our original jurisdiction pursuant to C.A.R. 21.  We issued a rule to show cause why the motion to dismiss should not be granted.1

 1 In addition to arguing lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), IEC also argued that Ethics Watch failed to state a claim for relief under C.R.C.P. 12(b)(5).  Because we focus here on reviewability, we do not address this alternative argument.

 II. Original Jurisdiction 
 ¶5 “Original relief pursuant to C.A.R. 21 is an extraordinary remedy that is limited both in purpose and availability.”  Dwyer v. State, 2015 CO 58, ¶ 4, 357 P.3d 185, 187.  That said, we “generally elect to hear C.A.R. 21 cases that raise issues of first impression and that are of significant public importance.”  Id., 357 P.3d at 187–88.  This case satisfies both criteria.  We have never considered whether IEC’s determinations of frivolousness are reviewable.  Furthermore, this case presents an important question, as its resolution implicates IEC’s operations going forward.
 III. Standard of Review 
 ¶6 Because the pertinent facts of this case are undisputed, we review the trial court’s denial of IEC’s motion to dismiss under C.R.C.P. 12(b)(1) de novo.  See Medina v. State, 35 P.3d 443, 452 (Colo. 2001).
 IV. Analysis 
 ¶7 To determine whether IEC’s frivolity determinations are subject to judicial review, we first examine the relevant text of Amendment 41, along with its statutory counterpart, section 24-18.5-101.  We then consider whether Amendment 41 permits the General Assembly to authorize judicial review of IEC’s frivolity determinations.  We conclude that the amendment only allows the legislature to sanction review of IEC’s enforcement decisions; thus, the General Assembly may not encroach upon IEC’s decisions not to enforce.  Therefore, we hold that section 24-18.5-101(9) does not apply to frivolity dismissals.

  

 A. Amendment 41 and Section 24-18.5-101 
 ¶8 Amendment 41 creates IEC and outlines its investigative function.  It provides that IEC “may dismiss frivolous complaints without conducting a public hearing.”  Amend. 41, § 5(3)(b).  When IEC does dismiss a complaint as frivolous, that complaint “shall be maintained confidential by [IEC].”  Id.  For non-frivolous complaints, however, IEC “shall conduct an investigation, hold a public hearing, and render findings.”  Id. § 5(3)(c).  Additionally, the amendment includes a “Penalty” section that features two core components: (1) any public official “who breaches the public trust . . . shall be liable” for certain fines; and (2) “[t]he manner of recovery and additional penalties may be provided by law.”  Id. § 6 (emphasis added).  Finally, the amendment provides that “[l]egislation may be enacted to facilitate the operation of this article, but in no way shall such legislation limit or restrict the provisions of this article or the powers herein granted.”  Id. § 9 (emphasis added).
 ¶9 Similar to Amendment 41, section 24-18.5-101 outlines various IEC functions.  Only subsection (9) is relevant here.  It provides as follows: “Any final action of [IEC] concerning a complaint shall be subject to judicial review by the district court for the city and county of Denver.”  § 24-18.5-101(9).2
 ¶10 Having articulated these provisions, we now turn to the substantive question presented here: whether IEC’s frivolity determinations are subject to judicial review.

 2 The statute also addresses frivolousness in the context of gift bans.  See § 24-18.5-101(5).  At oral argument, however, Ethics Watch conceded that it was not relying on this provision in its argument for judicial review.

 B. IEC’s Frivolity Determinations Are Not Subject to Judicial Review 
 ¶11 To begin with, we note that IEC is not an executive agency; it is instead an independent, constitutionally created commission that is “separate and distinct from both the executive and legislative branches.”  Dev. Pathways v. Ritter, 178 P.3d 524, 532 (Colo. 2008).  Thus, Amendment 41 articulates what the General Assembly can and cannot do.  Put differently, any authority that the General Assembly may exercise regarding IEC’s operations derives exclusively from Amendment 41 itself, not from standard principles of administrative agency law.
 ¶12 Pursuant to Amendment 41, the General Assembly can provide for additional penalties when an official breaches the public trust.  See Amend. 41, § 6.  As such, Amendment 41 vests the General Assembly with authority to enact legislation involving situations where IEC has enforced a penalty against an official.  But the General Assembly cannot enact legislation that “limit[s] or restrict[s]” IEC’s powers.  Id. § 9.  Therefore, because Amendment 41 only permits the legislature to act with respect to IEC’s enforcement actions, the General Assembly cannot constitutionally enact legislation pertaining to any IEC decisions that do not involve enforcing penalties.
 ¶13 Given this context, the scope of section 24-18.5-101(9)—which, again, provides that “[a]ny final action of [IEC] concerning a complaint shall be subject to judicial review”—is necessarily limited.  It can only encompass enforcement actions.  But IEC’s dismissal of a complaint as frivolous does not involve the enforcement of penalties; rather, it represents IEC’s decision not to enforce.  As discussed, the General Assembly is constitutionally prohibited from enacting legislation that could upend such a

  

 decision.  See Amend. 41, § 9.  Therefore, section 24-18.5-101(9) simply cannot apply to IEC’s dismissals of frivolous complaints.
 ¶14 We note that interpreting section 24-18.5-101(9) to exclude frivolity determinations preserves its constitutionality.3  We presume statutes to be constitutional, and we will not strike one down “unless a ‘clear and unmistakable’ conflict exists between the statute and a provision of the Colorado Constitution.”  Coffman v. Williamson, 2015 CO 35, ¶ 13, 348 P.3d 929, 934 (quoting E-470 Pub. Highway Auth. v. Revenig, 91 P.3d 1038, 1041 (Colo. 2004)).  We discern no such conflict here.  By its terms, subsection (9) authorizes judicial review of “final action[s].”  It is entirely reasonable that, in choosing this language, the General Assembly differentiated between enforcement and non-enforcement decisions, as does our constitution.  That is, the General Assembly recognized both what Amendment 41 permits (i.e., legislation involving penalties) and what it forbids (legislation restricting IEC’s powers), and it acted accordingly.  Thus, section 24-18.5-101(9) sanctions judicial review of IEC’s enforcement decisions without unconstitutionally trespassing on IEC’s power to dismiss frivolous complaints.
 ¶15 Ethics Watch nevertheless insists that IEC’s dismissal of its complaint constituted a final action, as it signified the end of IEC’s review.  Cf. MDC Holdings, Inc. v. Town of Parker, 223 P.3d 710, 721 (Colo. 2010) (“A final decision marks the consummation of the

 3 In its Response to Rule to Show Cause, Ethics Watch characterized IEC’s petition as urging us to deem section 24-18.5-101(9) unconstitutional “as applied to judicial review of erroneous determinations that a complaint is frivolous.”  IEC, however, never made such an argument, and it confirmed at oral argument that it is not asking us to declare subsection (9) unconstitutional.

 agency’s decision-making process and is one from which legal consequences flow.” (emphasis added)).  This argument misses the mark.  Ethics Watch characterizes IEC’s dismissal as “a Final Agency Action.”  Response to Rule to Show Cause, at 10.  But IEC is not an agency—it is an independent, constitutionally created commission.  See Dev. Pathways, 178 P.3d at 530 (noting that Amendment 41 “makes clear that [IEC] is . . . an entity separate and distinct from the executive and legislative branches”).  Thus, generalized case law regarding an agency’s “final action” is simply inapplicable to IEC.  Instead, it is the clear mandate of the constitution—which provides that “in no way shall [any] legislation limit or restrict” IEC’s powers, Amend. 41, § 9—that controls.
 ¶16 For example, at oral argument, Ethics Watch attempted to distinguish Heckler v. Chaney, 470 U.S. 821, 837–38 (1985), in which the Supreme Court held that the federal APA did not authorize judicial review of the Food and Drug Administration’s refusal to take requested enforcement actions.  In Ethics Watch’s view, the instant case is more akin to Bachowski v. Brennan, 502 F.2d 79, 88 (3d Cir. 1974), rev’d on other grounds sub nom. Dunlop v. Bachowski, 421 U.S. 560 (1975), in which the Third Circuit held that the APA allowed the plaintiffs to challenge in court the Secretary of Labor’s refusal to set aside a union election.  The Bachowski court noted that the Secretary’s decision hinged on “limited and clearly defined” statutory factors, resulting in “a rather straightforward factual determination” that was not “beyond the judicial capacity to supervise.”  Id.; cf. Heckler, 470 U.S. at 833–34 (distinguishing Bachowski).  Ethics Watch contends that, because IEC has promulgated rules regarding frivolous complaints, such “clearly

  

 defined” factors exist here, meaning a court may review whether IEC abused its discretion in dismissing a complaint as frivolous.
 ¶17 In focusing on the minutiae of Heckler and Bachowski, Ethics Watch misses the larger point: Both of these cases are inapposite.  That is, both considered whether the APA authorized judicial review of agency action.  If IEC were a creature of statute, we would likely conduct the same inquiry.4  But it is not.  Ethics Watch has pointed us to no case law suggesting that the general rules of administrative agency law should apply to IEC, a constitutionally created entity whose birthing document explicitly prohibits the General Assembly from interfering with it.  See Amend. 41, § 9.
 ¶18 Two additional factors bolster our conclusion that IEC’s frivolity determinations are not reviewable.  First, we note that Amendment 41 features no language authorizing judicial review of such determinations.  And second, the confidentiality requirement for frivolous complaints would in any event render such review impossible.
 ¶19 Ethics Watch disputes the latter point, arguing that the scope of Amendment 41’s confidentiality provision is in fact very narrow.  Ethics Watch specifically contends that, to the extent that IEC’s preliminary investigation of its complaint resulted in any written materials, such documents are not subject to the confidentiality rule.  Instead, Ethics Watch asserts that the amendment’s confidentiality language applies only to its original complaint.  See id. § 5(3)(b) (“Complaints dismissed as frivolous shall be maintained confidential by [IEC].”).

 4 Even in this context, IEC’s own rules would be of questionable relevance.  In both Heckler and Bachowski, the courts considered whether the statute featured clearly defined factors; they did not examine any rules that the agency had promulgated.

 ¶20 This construction makes no sense.  Requiring IEC to keep only the complaint confidential from Ethics Watch would be pointless; given that Ethics Watch is the very party who authored the complaint, it is assuredly already aware of its contents.  Indeed, Ethics Watch is free to publicize those contents to whomever it chooses.  Therefore, to accept Ethics Watch’s narrow reading of Amendment 41 would be to defang its confidentiality requirement and render it a nullity.  Cf. Colo. Educ. Ass’n v. Rutt, 184 P.3d 65, 80 (Colo. 2008) (rejecting an interpretation of a constitutional provision as “contrary to the electorate’s intent” because the interpretation would “render [that provision] a nullity”).  Rather, the only logical construction of Amendment 41’s confidentiality language is that it applies to IEC’s investigative work product, i.e., to any documents that the commission may create in the course of determining whether a complaint is frivolous.
 ¶21 And therein lies the problem.  Again, Ethics Watch seeks judicial review of IEC’s determination under either the APA or C.R.C.P. 106.5  To conduct such a review, a court must examine the underlying record.  See § 24-4-106(6) (“In every case of agency action, the record . . . shall include the original or certified copies of all pleadings, applications, evidence, exhibits, and other papers presented to or considered by the agency . . . .” (emphases added)); C.R.C.P. 106(a)(4)(I) (“Review shall be limited to a determination of

 5 Because we conclude that IEC’s frivolity determinations are not subject to judicial review at all, we need not resolve the procedural propriety of Ethics Watch’s claims.  Arguably, however, a claim under the APA would be improper for any IEC-related matter.  The APA applies to executive agencies.  See § 24-4-107, C.R.S. (2015).  Once again, IEC is not an agency—it is an independent, constitutionally created commission.  See Dev. Pathways, 178 P.3d at 535 (“Amendment [41] creates a super-agency, a commission set apart from the legislative and executive branches of government . . . .”).

 whether the [governmental body] has . . . abused its discretion, based on the evidence in the record before the [body].” (emphasis added)).  But when IEC dismisses a frivolous complaint, it is constitutionally prohibited from disclosing the very record that would ordinarily form the basis for judicial review.6  Therefore, Amendment 41’s confidentiality requirement further militates against judicial review of IEC’s frivolity determinations.7
 ¶22 Accordingly, we conclude that IEC’s decision to dismiss a complaint as frivolous is not subject to judicial review.8
 V. Conclusion 
 ¶23 The language of Amendment 41 is clear.  Although the General Assembly may enact legislation relating to IEC’s enforcement decisions, it may not encroach upon IEC’s decisions not to enforce.  As a result, section 24-18.5-101(9) does not apply to frivolity dismissals.  Therefore, we hold that IEC’s decision to dismiss a complaint as frivolous is not subject to judicial review.  Accordingly, we make our rule to show cause

 6 At oral argument, Ethics Watch suggested that a court could scrutinize certain documents on judicial review while simultaneously shielding them from public view.  Whether this is true or not is irrelevant.  IEC is not just required to keep its work product confidential from the public at large; it must keep such documents confidential from everyone, including the complaining party.
 7 To the extent that Ethics Watch contends that a court could render a ruling without reviewing IEC’s work product—that is, simply pronounce whether a complaint alone is frivolous on its face—its argument is unavailing.  This would place IEC in the bizarre position of conducting a preliminary investigation but then being forbidden from citing the results of that investigation in court.  Essentially, such a procedure would force IEC to defend its behavior in an adversarial proceeding with one hand tied behind its back.
 8 Because we conclude that IEC’s frivolity determinations are not subject to judicial review, we need not consider whether Ethics Watch has standing to bring this lawsuit.

 absolute, and we remand this case to the trial court with instructions to dismiss Ethics Watch’s complaint for lack of jurisdiction.

 JUSTICE GABRIEL dissents, and JUSTICE MÁRQUEZ and JUSTICE HOOD join in the dissent.
 JUSTICE GABRIEL, dissenting.
 ¶24 As the majority observes, this case concerns a party’s right to judicial review of a decision by the Independent Ethics Commission (“IEC” or “commission”) to dismiss the party’s complaint as frivolous.  Specifically, Colorado Ethics Watch contends that judicial review is authorized by section 24-18.5-101(9), C.R.S. (2015).
 ¶25 Even though no party in this case has ever advanced such an argument, the majority concludes that although the General Assembly may authorize judicial review of IEC enforcement decisions, it may not encroach on IEC decisions not to enforce.  Maj. op. ¶ 1.  Concluding further that the IEC’s decision to dismiss a complaint as frivolous amounts to a decision not to enforce, the majority holds that section 24-18.5-101(9) does not apply to such a decision.  Id.  The majority thus resolves this case based, in large part, on an argument that no party has raised, and in doing so, it discusses only tangentially (if at all) the arguments on which the IEC did rely, namely, that (1) its duty of confidentiality precludes judicial review of a decision to dismiss a complaint as frivolous and (2) the dismissal of a complaint as frivolous constitutes the exercise of a discretionary gatekeeping function by the IEC and is therefore not subject to judicial review.
 ¶26 I disagree with the majority’s conclusions and the IEC’s above-noted assertions.  In my view, (1) nothing in the Colorado Constitution precludes the application of section 24-18.5-101(9) in this context, and the dismissal of a complaint as frivolous constitutes “final action” within the meaning of that section; (2) the IEC’s duty of confidentiality does not preclude judicial review; (3) the IEC’s dismissal of a complaint

  

 as frivolous does not constitute the exercise of a discretionary gatekeeping function in the circumstances presented here; and (4) the majority’s opinion undermines a primary purpose of the IEC, namely, to preserve public confidence in government.  Accordingly, I respectfully dissent.

 I.  Facts and Procedural History 
 ¶27 This case began when a citizen filed a complaint against, among others, a county commissioner (the “subject commissioner”), alleging violations of Colorado campaign finance law.  The Office of Administrative Courts (“OAC”) ultimately found that the subject commissioner had violated a statutory prohibition on using public funds to support a local ballot issue and ordered him, as “an individual responsible for the improper expenditure,” to reimburse his county’s general fund in the amount of $1,000.
 ¶28 Thereafter, the board of county commissioners met to determine whether to appeal the OAC’s decision.  The subject commissioner chaired this meeting.  After the county attorney summarized the proceedings, another county commissioner moved that the board direct the county attorney to appeal the case.  The subject commissioner seconded the motion, and after further discussion, the motion passed by a 2–1 vote, with the subject commissioner voting in favor of the motion.  Thus, the subject commissioner voted to direct the county attorney to expend county funds to appeal a monetary penalty imposed on the subject commissioner personally.
 ¶29 Based on this conduct, Ethics Watch filed a complaint with the IEC, alleging that the subject commissioner’s actions violated section 24-18-109(3)(a), C.R.S. (2015).  That provision (1) requires a member of the governing body of a local government who has a

  

 personal or private interest in any matter proposed or pending before the governing body to disclose that interest and (2) prohibits that member from voting on the matter or attempting to influence the decision of other members of the governing body voting on the matter.  Id.
 ¶30 By a 3–2 vote, the IEC subsequently dismissed Ethics Watch’s complaint as frivolous, and Ethics Watch sought judicial review in the district court for the city and county of Denver.  The IEC moved to dismiss Ethics Watch’s petition for judicial review, however, arguing that the IEC’s decision to dismiss Ethics Watch’s ethics complaint as frivolous was not subject to judicial review.
 ¶31 The district court denied the IEC’s motion to dismiss, as well as its subsequent motion for reconsideration.  As pertinent here, the district court concluded that the IEC’s dismissal of the ethics complaint constituted final agency action that was subject to judicial review.  The court further concluded that suppression orders would adequately safeguard the confidentiality of frivolous complaints and that Ethics Watch had standing to seek judicial review.
 ¶32 The IEC then filed the present C.A.R. 21 petition, and we issued a rule to show cause why the motion to dismiss should not be granted.

 II.  Analysis
 ¶33 I begin by addressing the applicable constitutional and statutory provisions and conclude that (1) section 24-18.5-101(9) applies to a complaint dismissed by the IEC as frivolous and (2) such a dismissal is a final action that is subject to judicial review pursuant to that section.  I then address and reject the IEC’s contentions that judicial

  

 review in this case is precluded by (1) the IEC’s duty to maintain the confidentiality of dismissed frivolous complaints and (2) the fact that the dismissal of a frivolous complaint is a discretionary gatekeeping function of the IEC.
 A.  Section 24-18.5-101(9) 
 ¶34 Article XXIX, section 5(3)(a) of our state’s constitution, which for consistency with the majority opinion I will refer to as Amendment 41, authorizes any person to file a complaint “asking whether a public officer, member of the general assembly, local government official, or government employee has failed to comply” with certain standards of conduct.  As the majority observes, maj. op. ¶ 2, although the IEC must “conduct an investigation, hold a public hearing, and render findings on each non-frivolous complaint,” it may dismiss frivolous complaints without conducting a public hearing.  Colo. Const. art. XXIX, § 5(3)(b)–(c).  In addition, Amendment 41 provides, “Complaints dismissed as frivolous shall be maintained confidential by the commission.”  Id. at § 5(3)(b).
 ¶35 Amendment 41, however, says nothing about the right of judicial review from determinations on either frivolous or non-frivolous complaints.  Section 24-18.5-101(9), which is the IEC’s implementing statute, describes the scope of judicial review, and the IEC conceded at oral argument that this statute is constitutional.
 ¶36 Section 24-18.5-101(9) provides, “Any final action of the commission concerning a complaint shall be subject to judicial review by the district court for the city and county of Denver.”  Notwithstanding this clear and unambiguous language and the fact that all parties in this case have conceded this provision’s constitutionality, the majority

  

 concludes that the phrase “[a]ny final action” is limited to IEC enforcement actions and cannot constitutionally include IEC decisions not to exercise its enforcement power, which the majority deems to include decisions to dismiss complaints as frivolous.  Maj. op. ¶¶ 12–13.  The majority derives this argument from sections 6 and 9 of Amendment 41.  Id. at ¶ 12.
 ¶37 Section 6 concerns penalties and provides that (1) enumerated public officials who breach the public trust shall be liable to their state or local jurisdictions for double the amount of the financial equivalent of any benefits obtained by such actions and (2) “[t]he manner of recovery and additional penalties may be provided by law.”  Colo. Const. art. XXIX, § 6.
 ¶38 Section 9, in turn, which is entitled “Legislation to facilitate article,” provides, “Legislation may be enacted to facilitate the operation of this article, but in no way shall such legislation limit or restrict the provisions of this article or the powers herein granted.”  Colo. Const. art. XXIX, § 9.
 ¶39 Reading sections 6 and 9 together, the majority concludes that Amendment 41 vests the General Assembly with the authority to enact legislation in situations in which the IEC has enforced a penalty against an official but precludes the legislature from enacting legislation pertaining to IEC decisions that do not involve enforcing penalties.  Maj. op. ¶ 12.  For three reasons, I respectfully disagree.
 ¶40 First, the fact that section 6 says that “additional penalties may be provided by law” in no way limits implementing legislation to matters relating to the enforcement of penalties.  Section 6 does not define the scope of the General Assembly’s authority to

  

 pass implementing legislation.  Rather, section 9 is the provision defining the legislature’s authority, and that section precludes only legislation limiting or restricting the provisions of Amendment 41 or the powers granted therein.  In my view, reading section 6 to limit the scope of the legislature’s authority to pass implementing legislation renders section 9 superfluous, and we must avoid such a construction.  SeePeople v. Rodriguez,112 P.3d 693, 697(Colo. 2005)(noting that appellate courts presume that each phrase of the constitution was included for a purpose and thus reading a constitutional provision to imply a particular requirement because interpreting the provision otherwise would render a portion of it superfluous); In re Great Outdoors Colo. Tr. Fund,913 P.2d 533, 542 (Colo. 1996) (“[I]n construing constitutional language, each clause and sentence must be presumed to have purpose and use . . . .  Courts must lean in favor of a construction that will render every word operative, rather than one that may make some words idle and nugatory.”).
 ¶41 Second, I see nothing in section 9 precluding the General Assembly from enacting legislation touching on IEC decisions other than those enforcing penalties, including legislation authorizing judicial review of a decision to dismiss a complaint as frivolous.  As noted above, section 9 precludes the legislature from enacting legislation that limits or restricts the provisions of Amendment 41 or the powers granted thereunder.  Colo. Const. art. XXIX, § 9.  Amendment 41, however, is silent regarding judicial review.  Thus, a provision like section 24-18.5-101(9), which authorizes judicial review of “[a]ny final action” of the IEC, cannot be read to limit or restrict the provisions of Amendment 41 or the powers granted therein.  Accordingly, in my view,

  

 section 24-18.5-101(9) allows for judicial review of an IEC decision to dismiss a complaint as frivolous and in no way conflicts with section 9 of Amendment 41.
 ¶42 Third, the implications of the majority’s rationale are troubling.  As I understand the majority’s view, judicial review would be permitted only when the IEC has investigated, held a hearing, found a violation, and enforced a penalty.  Accordingly, a complainant would not be entitled to judicial review in a case in which the IEC investigated the complainant’s complaint, held a hearing, and then dismissed the complaint on the merits.  I perceive no basis in the constitution or in any applicable law for depriving such a complainant of a right to judicial review, and I cannot subscribe to a construction of Amendment 41 that would lead to such a result.  See Huber v. Colo. Mining Ass’n, 264 P.3d 884, 889 (Colo. 2011) (noting that in construing a constitutional provision, the supreme court must avoid interpretations that lead to unjust, absurd, or unreasonable results); cf. § 2-4-203(1)(e), C.R.S. (2015) (providing that if a statute is ambiguous, then a court, in determining the intention of the General Assembly, may consider the consequences of a particular construction).
 ¶43 For these reasons, I disagree with the majority’s conclusion that section 24-18.5-101(9) allows judicial review of IEC enforcement decisions but precludes judicial review of IEC decisions not to enforce, including decisions to dismiss complaints as frivolous.  Rather, in my view, section 24-18.5-101(9) allows judicial review of any final action of the IEC, just as it says.

  

 ¶44 The question thus becomes whether the IEC’s decision to dismiss a complaint as frivolous constitutes “final action” within the meaning of this statute.  I believe that it does.1
 ¶45 Unlike the majority, I view the United States Supreme Court’s decision in Heckler v. Chaney, 470 U.S. 821 (1985), as instructive here.  In Heckler, 470 U.S. at 831, the Court, construing the federal Administrative Procedure Act, 5 U.S.C. § 701(a), observed that “an agency’s decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency’s absolute discretion.”  In so stating, the Court recognized the “general unsuitability for judicial review of agency decisions to refuse enforcement.”  Id.  The Court went on to emphasize, however, that an agency’s decision not to take enforcement action was “only presumptively unreviewable.”  Id. at 832.  The Court then opined that such a presumption “may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.”  Id. at 833.
 ¶46 That is precisely the case here.  Specifically, the IEC has enacted rules of procedure regarding its handling of complaints.  In these rules, the IEC has defined “frivolous” to mean “a complaint filed without a rational argument for the IEC’s involvement based on the facts or law.”  IEC Rules of Procedure § 3(A)(5).

 1 Because the right to judicial review in this case turns on section 24-18.5-101(9), I need not consider the analogous right to judicial review established by the Colorado Administrative Procedures Act (“APA”), § 24-4-106, C.R.S. (2015).  See V Bar Ranch LLC v. Cotton, 233 P.3d 1200, 1205 (Colo. 2010) (noting that the APA generally serves as a “gap-filler” and that its provisions apply to agency actions unless they conflict with a specific provision of the agency’s statute or another statutory provision preempts the provisions of the APA).

 ¶47 Accordingly, because the IEC’s governing rules provide guidelines for it to follow in determining whether to dismiss a complaint as frivolous, the IEC does not have unfettered discretion in that decision.  See Heckler, 470 U.S. at 833.
 ¶48 Moreover, compliance with the applicable guidelines is a matter that is readily subject to judicial review; a reviewing court ordinarily would need to look no further than the face of the complaint, Amendment 41, and section 24-18.5-101 to determine whether the complaint contains “a rational argument for the IEC’s involvement based on the facts or law.”  IEC Rules of Procedure § 3(A)(5); cf. Dunlop v. Bachowski, 421 U.S. 560, 567 n.7 (1975) (rejecting the Secretary of Labor’s contention that a decision not to prosecute a matter was an unreviewable exercise of prosecutorial discretion, when the applicable statute required the Secretary to investigate certain complaints and to bring a civil lawsuit “if he finds probable cause to believe that a violation . . . has occurred”), overruled in part on other grounds by Local No. 82 v. Crowley, 467 U.S. 526, 549 n.22 (1984).
 ¶49 And in my view, the IEC’s dismissal of a complaint constitutes “final action” within the meaning of section 24-18.5-101 because such a dismissal ends the IEC’s decision-making process, is neither tentative nor interlocutory in nature, and has legal consequences for the complainant.  Cf. Chittenden v. Colo. Bd. of Soc. Work Exam’rs, 2012 COA 150, ¶ 26, 292 P.3d 1138, 1143 (“For agency action to be final pursuant to section 24-4-106(2), it must (1) mark the consummation of the agency’s decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an

  

 action by which rights or obligations have been determined or from which legal consequences will flow.”).
 ¶50 For these reasons, I would conclude that the IEC’s decision to dismiss Ethics Watch’s complaint as frivolous was properly subject to judicial review, and I would discharge the order to show cause.  I next explain why I am not persuaded otherwise by the IEC’s contrary assertions.2
 B.  Duty of Confidentiality 
 ¶51 As noted above, the IEC contends that its duty to maintain the confidentiality of a dismissed frivolous complaint somehow precludes judicial review.  For several reasons, I am not persuaded.
 ¶52 First, nothing in section 24-18.5-101(9) creates such an exception.  To the contrary, that provision speaks in broad language: “Any final action of the commission concerning a complaint shall be subject to judicial review by the district court for the city and county of Denver.”  (Emphases added.)  The legislature could have limited this provision to final actions concerning non-frivolous complaints.  Alternatively, it could have provided that the IEC’s dismissal of a complaint as frivolous is not subject to judicial review.  It did neither, choosing instead to provide for judicial review of “[a]ny final action.”  And section 24-18.5-101(9) makes no mention of confidentiality concerns.
 ¶53 Second, contrary to the majority’s view, both Amendment 41 and the IEC’s own rules of procedure limit the duty of confidentiality to the complaint.  See Colo. Const.

 2  Although the majority addresses these issues only tangentially, if at all, I believe that I must do so because were I to agree with the IEC, that would potentially dictate a different result.

 art. XXIX, § 5(3)(b) (“Complaints dismissed as frivolous shall be maintained confidential by the commission.”); IEC Rules of Procedure § 7(E) (“Any complaint dismissed as frivolous shall be maintained confidential by the Commission.”).  Although the majority contends that such a limitation renders the confidentiality provision a nullity, maj. op. ¶ 20, Amendment 41 itself, the IEC’s rules of procedure, and the undisputed fact that the duty of confidentiality does not apply to Ethics Watch, which is free to publicize the contents of its complaint to whomever it chooses, establish the limited reach of Amendment 41’s confidentiality provision.
 ¶54 Nor do I read the duty of confidentiality so broadly as to preclude the disclosure of a dismissed complaint to a court in the context of a judicial review proceeding.  Indeed, I know of no analogous context in which a duty of confidentiality precludes submitting an appropriate dispute to a court with jurisdiction over the matter.  To the contrary, judicial review of a complaint dismissed by the IEC as frivolous would be similar to the myriad cases in which courts are called on to resolve disputes involving confidential or proprietary information and in which the parties have agreed to protect such information.  By way of example, cases involving trade secrets and intellectual property often present confidentiality issues, and courts have proven well-equipped to handle them through appropriate protective and suppression orders.  See C.R.C.P. 26(c) (concerning protective orders); C.R.C.P. 121, § 1-5 (concerning orders limiting access to court files).
 ¶55 Third, even were I to agree with the majority that the IEC’s duty of confidentiality extends beyond the dismissed complaint to the IEC’s “record,” I still do

  

 not agree that such a duty would preclude the judicial review for which the General Assembly has expressly provided.  This is particularly true here, where the IEC’s Rules of Procedure make clear that any such “record” would be limited.  
 ¶56 Specifically, section 7(F) of the IEC’s Rules of Procedure provides:

 The Commission may determine whether a complaint is frivolous based on the face of the complaint itself.  Alternatively, the Commission in its discretion may defer a frivolous determination until after a preliminary investigation of the complaint by the staff of the Commission.  The Commission shall exercise care to the extent practicable not to disclose the contents of the complaint as part of the preliminary investigation.  If after a preliminary investigation the Commission is unable to determine whether or not a complaint is frivolous, the Commission may disclose the complaint to the individual who is the subject of the complaint for their response in order to aid the Commission in rendering a frivolous determination.
 ¶57 Thus, in many cases, the record would be limited to the complaint itself.  In others, it would be limited to a “preliminary investigation.”  And even if the IEC’s investigative work product were confidential, that confidentiality would not immunize the facts of the case, as opposed to the IEC’s mental processes, from disclosure to a court.
 ¶58 Fourth, as noted above, and as the majority acknowledges, the duty of confidentiality does not apply to Ethics Watch.  Maj. op. ¶ 20.  Accordingly, regardless of the duty imposed on the IEC, Ethics Watch has every right to disclose its complaint, and any facts that it has uncovered, to a district court in the context of a request for judicial review.  The court can then determine whether any of that information should be placed under seal, and it can proceed to assess independently whether Ethics

  

 Watch’s complaint was frivolous within the above-described guidelines adopted by the IEC.
 ¶59 For all of these reasons, I disagree with the IEC’s assertion that its duty of confidentiality precludes judicial review in this case.
 C.  The IEC’s Function 
 ¶60 I likewise am unpersuaded by the IEC’s characterization of the dismissal of an allegedly frivolous ethics complaint as a discretionary gatekeeping function or a matter of prosecutorial discretion within the IEC’s area of expertise.
 ¶61 The IEC’s Rules of Procedure contain detailed requirements for what must be included in a complaint.  See IEC Rules of Procedure § 7.  Among other things, the complaint must contain a statement of the facts underlying the complaint “with specificity regarding the ethical violation, including the section or sections of Article XXIX or other standard of conduct which the complainant believes was violated.”  See id. at § 7(D)(1).  In addition, the complaint must contain (1) the name, address, position, and email address (if available) of any person whose conduct is being complained about; (2) the date of the alleged violation; and (3) “[a] statement that, to the best of the complainant’s knowledge, information and belief, the facts and any allegations set out in the complaint are true.”  See id. at § 7(D)(2)–(4).  Accordingly, the complaint is far more than a formulaic request for an investigation.  It is a specific and detailed allegation of an ethics violation.  As a result, in my view, the dismissal of such a complaint, particularly on the ground that it is frivolous, does not constitute the mere exercise of a discretionary gatekeeping function.  To the contrary, a dismissal as

  

 frivolous under the IEC’s Rules of Procedure amounts to a legal conclusion that the complaint lacks a rational argument for the IEC’s involvement based on the facts or law.  In short, it is a substantive legal ruling on a formal complaint.
 ¶62 Moreover, such a dismissal does not involve a balancing of factors that are peculiarly within the IEC’s expertise, such that the IEC is better positioned than a court to assess whether a complaint is frivolous.  As noted above, the term “frivolous” is defined in the IEC Rules of Procedure, and in my view, a court is just as able as the IEC to determine whether a complaint is frivolous pursuant to the established guidelines.
 ¶63 In reaching this conclusion, I note that this case does not involve the kind of prosecutorial discretion discussed in Heckler, 470 U.S. at 831, in which an agency

 must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action best fits the agency’s overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.
 ¶64 The IEC does not serve such a prosecutorial function.  Rather, it operates in an adjudicatory role and does not have the unfettered discretion to pursue whatever complaints it chooses.  Indeed, it is required to conduct an investigation, hold a public hearing, and render findings on every non-frivolous complaint brought before it.  Colo. Const. art. XXIX, § 5(3)(c).
 ¶65 Accordingly, I disagree that the IEC’s decision to dismiss a complaint as frivolous involves the exercise of agency expertise and is merely the exercise of a discretionary gatekeeping function, such that the issue should be immunized from judicial review.

 III.  Conclusion 
 ¶66 A primary purpose of the IEC is to preserve public confidence in government.  Colo. Const. art. XXIX, § 1.  In my view, allowing judicial review here, as section 24-18.5-101(9) expressly requires, would promote that laudable goal.  In contrast, by precluding judicial review in this context, I fear that the majority’s ruling will have precisely the opposite effect.
 ¶67 For all of the foregoing reasons, I would discharge the order to show cause.  I therefore respectfully dissent.

 I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE HOOD join in this dissent.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || April 25, 2016

Back